1

2

3

4

5

6

7                            UNITED STATES DISTRICT COURT

8                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ANTHONY W. ROBINSON,                          No.  2:12-cv-2783 MCE GGH PS

11                 Plaintiff,

12         v.                                       ORDER

13   COUNTY OF SAN JOAQUIN,

14                 Defendant.

15

16         Previously pending on this court's law and motion calendar for April 24, 2014 was

17   plaintiff's motion to compel non-party EEOC's compliance with subpoenas, filed March 11,

18   2014.[1]  Defendant filed an opposition on March 14, 2014, the EEOC filed a late permitted

19   opposition on April 2, 2014, and plaintiff filed responses on March 21 and April 7, 2014 to court

20   orders filed March 19 and April 4, 2014 regarding the subpoenas.  Plaintiff appeared in pro se.

21   The County was represented by Velma Lim.  Sirithon Thanasombat appeared telephonically on

22   behalf of non-party EEOC. After hearing oral argument and reviewing the pertinent papers, the

23   court now issues the following order.

24   BACKGROUND

25         Plaintiff's motion seeks to compel the EEOC's compliance with subpoenas issued

26   December 4, 2013, (ECF No. 60-2 at 18), and February 14, 2014, (ECF No. 60-2 at 33).  The

27   _____

28   [1]  This matter was previously taken off calendar and under submission without a hearing (ECF
     No. 59); however, a hearing has been determined necessary in light of later filings.

1

1    subpoenas seek "recorded questions and answers of witnesses during EEOC Fact Finding

2    Conference held June 20, 2012 for EEOC complaints 550-2010-00655 and 550-2011-01730."

3    Both subpoenas make the identical request.[2]  The EEOC represents that it produced notes from

4    this fact finding conference and produced them on December 18, 2013,[3] subject to redactions

5    based on certain privileges, including the deliberative process privilege, and sovereign immunity.

6    Other objections were: overbroad, vague, ambiguous and uncertain, and that the subpoena did not

7    name the proper agency official and was not served on that individual.  In response to the

8    February 14, 2014 subpoena, the EEOC responded that it had already produced all non-privileged

9    documents.

10    DISCUSSION[4]

11          Plaintiff's motion seeks to expand the terms of the original subpoena by seeking a record

12    of the fact finding conference in his current request for written documentation and/or transcripts

13    of the fact finding conference; however, plaintiff may not broaden the parameters of the original

14    subpoena through a motion to compel.  Furthermore, the EEOC definitively states that there was

15    no transcript of the conference.  (ECF No. 60-1 at 5; Baldonado Dec., ¶ 11, ECF No. 73.)

16    Therefore, this order is limited to addressing the documents responsive to plaintiff's subpoena,

17    recorded questions and answers of witnesses at the fact finding conference.

18          The EEOC opposes the motion, contending that it has responded promptly and completely

19    by producing documents responsive to the subpoenas, subject to privileges, but that it also

20

21    _____

22    [2]   The December, 2013 subpoena was served on Malcolm Loungeway and/or Scott Doughtie,
      officials at the EEOC.  The February, 2014 subpoena was served on Michael Baldanano or Scott
      Doughie, both officials at the EEOC.  (ECF No. 60-2 at 18, 33.)

23    [3]   The EEOC had previously produced 450 pages of documents to plaintiff in October, 2012,
24    pursuant to a FOIA request, but conducted another search after receiving the first subpoena and
      located notes from the June 20, 2012 fact finding conference that had not previously been
25    produced.

26    [4]   The County also filed an opposition to plaintiff's motion.  It argues that the documents have
      either been produced, are not relevant, or are protected by the deliberative process privilege.
27    Defendant does not have standing to oppose the motion except to assert *its own* privilege claims
      relating to documents sought to be compelled.  W.W. Schwarzer, A.W. Tashima & J. Wagstaffe,
28    Federal Civil Procedure Before Trial § 11:2286.

1    produced "any and all written documentation" from the conference, subject to privileges, which

2    goes beyond the request of the subpoena.  Furthermore, the EEOC argues that contrary to

3    plaintiff's claims, it did not simply provide him with a summation of the June 20th conference by

4    defense counsel Gutierrez, but provided non-privileged notes taken by the EEOC during the

5    conference.

6    I.   Sovereign Immunity

7         The EEOC contends that it is only subject to suit for disclosure of documents under the

8    FOIA, exclusively.  It claims it has not waived its immunity in any other aspect, and so informed

9    plaintiff when it produced the documents voluntarily.  Federal subpoenas issued to non-party

10   federal officials to produce official records or to testify are fully enforceable despite any claim of

11   immunity.  Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 778 (9th Cir.

12   1994).  The Ninth Circuit Court of Appeals limited the statute which permits the head of a federal

13   agency to promulgate regulations governing the use of its records by stating that 5 U.S.C. § 301[5]

14   "does not, by its own force, authorize federal agency heads to withhold evidence sought under a

15   valid federal court subpoena." Id. at 777.  Rather, the Federal Rules of Civil Procedure apply in a

16   federal case where a subpoena is issued against a federal agency.  Id.  See 5 U.S.C. § 301 ("This

17   section does not authorize withholding information from the public or limiting the availability of

18   records to the public.").

19        The Exxon court held that the Department of the Interior could not adopt regulations

20   withholding information or shielding government employees from a valid subpoena.  34 F.3d at

21   776-78.  It reasoned that such a case was distinguishable from one involving a state court

22   attempting to subpoena federal officials.  The doctrine of sovereign immunity prevents a state

23

24   [5]   Section 301 states:

25            The head of an Executive department or military department may
             prescribe regulations for the government of his department, the
26           conduct of its employees, the distribution and performance of its
             business, and the custody, use, and preservation of its records,
27           papers, and property. This section does not authorize withholding
             information from the public or limiting the availability of records to
28           the public.

3

1   court from compelling discovery from a federal employee, because "[t]he limitations on a state

2   court's subpoena and contempt powers stem from the sovereign immunity of the United States

3   and from the Supremacy Clause.  Such limitations do not apply when a federal court exercises its

4   subpoena power against federal officials."  Id. at 778.  In fact, the Exxon court specifically found

5   that Touhy[6] regulations do not authorize "federal agencies to refuse to comply with proper

6   discovery requests."  Id. at 780.  The court specifically held: "the district court erred in holding

7   that § 301 [the statutory authority for Touhy regulations] authorizes federal agencies to refuse to

8   comply with proper discovery requests.  Section 301 does not create an independent privilege to

9   withhold government information or shield federal employees from valid subpoenas."  Id.  "[T]he

10  regulations simply set forth administrative procedures to be followed when demands for

11  information are received."  Kwan Fai Mak v. F.B.I., 252 F.3d 1089, 1092 (9th Cir. 2001).

12       In a similar case, the Sixth Circuit held that the Federal Reserve regulations could not be

13  enforced because they allowed that agency to "effectively override the application of the Federal

14  Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery…."  In re

15  Bankers Trust Co., 61 F.3d 465, 470 (6th Cir. 1995).  To do so, an "enabling statute must be more

16  specific than a general grant of authority" as found in the regulation at issue there which required

17  a subpoenaed party to continually decline to disclose information or testimony.  Id.

18       Based on these cases, the EEOC may not claim sovereign immunity.  This federal case is

19  governed by the Federal Rules of Civil Procedure, and the EEOC is a non-party federal agency

20  whose federal officials have possession of official records requested by a federal subpoena, and is

21  therefore governed by those federal rules.

22  II.  Deliberative Process Privilege

23       A.  Standards

24            1.  Procedural Prerequisites

25  Executive privileges asserted by a government agency have procedural prerequisites:

26       There must be a formal claim of privilege, lodged by the head of
         the department which has control over the matter, after actual
27

28  _____

    6   United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S. Ct. 416, 95 L.Ed. 417 (1951).

personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for a claim of privilege ...

United States v. O'Neill, 619 F.2d 222, 225 (3rd Cir. 1980) (quoting United States v. Reynolds, 345 U.S. 1, 7-8, 73 S. Ct. 528, 97 L.Ed. 727 (1953).  These requirements have been applied to all forms of "executive" privilege.  Yang v. Reno, 157 F.R.D. 625, 632 (1994); Martin v. Albany Business Journal, Inc., 780 F.Supp. 927, 932 (N.D.N.Y.1992).  Courts have allowed the claim to be made by a person in an executive policy position.  See Reynolds, 345 U.S. at 8 n. 20, 73 S. Ct. at 532 n. 20 ("The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he or she should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced ...").  See also Scott Paper Co., 943 F.Supp. 501 (E.D.Pa.1996); Yang, 157 F.R.D. at 632-34 & n. 4 (1994) (considering official status necessary to invoke privilege, collecting cases, and finding executive secretary of National Security Council could not invoke governmental privileges); Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 6 (N.D.N.Y.1983) (official invoking the privilege may be an agency head or a subordinate with high authority).  Some jurisdictions do not allow the agency head to delegate the authority to claim the privilege.  Scott, 943 F.Supp. at 502.  Other jurisdictions which allow the authority to be delegated require the delegation to be accompanied by detailed guidelines regarding the use of the privilege.  Id. at 503.

The official making the declaration of privilege must: "1) make a knowing and formal claim of privilege; 2) submit a Declaration stating the precise reasons for preserving the confidentiality of the investigative report; and 3) identify and describe the documents."  E.E.O.C. v. Continental Airlines, Inc., 395 F.Supp.2d 738, 741 (N.D. Ill. 2005).

Of critical importance, "the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege."  In re Sealed Case, 856 F.2d 268, 271 (D.C.Cir.1988) (law enforcement privilege) (emphasis added).  An official cannot invoke a privilege without personally considering the material for which the privilege is sought.  Yang, 157 F.R.D. at 634.  In the instant case, the EEOC has produced a

1   declaration by EEOC Deputy District Director Michael Connolly.  Although Connolly is a proper

2   agency head, his declaration makes no statements in support of the EEOC's privilege claims.  His

3   declaration addresses only the nature of the EEO charges filed by plaintiff, what documents the

4   EEOC produced in response to his request for documents, that some documents were withheld or

5   redacted on the basis of exemptions to the FOIA, and that no transcript exists from the June 20,

6   2012 fact-finding conference.  (Connolly Dec., ECF No. 60-3 at 1-3.)

7          This declaration does not contain the specifics required of an agency head official, most

8   importantly the nature of the policy invoked that would warrant protection of the documents at

9   issue, and why the material is qualified under this privilege.  One must use a rule of reason in

10  determining whether the procedural requirements of invoking the deliberative process privilege

11  have been satisfied. There may be cases in which every single document withheld is unique unto

12  itself, and should be declared privileged only after a document-by-document analysis or, in other

13  cases, where the documents do not vary in their type or purpose.  In the latter case, a collective

14  judgment on the need for invoking deliberative process may be given.  The EEOC has not met the

15  procedural requirements of invoking the privilege.  Despite that failing, the merits of the claimed

16  privilege will be examined because the essential privilege here is directed to an agency

17  adjudicative process—something that usually is, and should be, protected from discovery insofar

18  as the information to be protected constitutes the mental impressions of an EEOC case decision

19  maker.

20                  2.  Substantive Standards

21          The deliberative process privilege protects the quality of agency decisions by allowing

22  candor in formulating policy, and encouraging public review based on the decision itself rather

23  than the considerations that contributed to the decision.  N.L.R.B. v. Sears, Roebuck & Co., 421

24  U.S. 132, 151-152, 95 S. Ct. 1504, 44 L.Ed.2d 29 (1975).  The privilege "shields certain intra-

25  agency communications from disclosure to allow agencies freely to explore possibilities, engage

26  in internal debates, or play devil's advocate without fear of public scrutiny."  Lahr v. Nat'l

27  Transp. Safety Board, 569 F.3d 964, 979 (9th Cir. 2009).  Its aim is to protect the policy making

28  process.  It requires a two-step review by the court.  See Carter v. U.S. Dept. Of Commerce, 307

                                              6

F.3d 1084, 1089 (9th Cir. 2002) (stating standards and holding that standards for invoking

deliberative process in a FOIA context are identical to those in civil discovery).

First, the matter protected must be pre-decisional, generated before the adoption of an

agency policy or decision. Predecisional matters are prepared "in order to assist an agency

decisionmaker in arriving at his decision." Renegotiation Board v. Grumman Aircraft Eng'g

Corp., 421 U.S. 168, 184, 95 S. Ct. 1491, 1500, 44 L.Ed.2d 57 (1975); accord, Assembly of State

of Cal. v. U.S. Dept. of Commerce, 968 F.2d 916, 920-21 (9th Cir.1992). Predecisional material

is distinguished from material supporting a decision already made. Id. Accordingly, in

determining whether the "predecisional" prong applies, this circuit looks first to the purpose of

the matter to be discovered. See Assembly of State of Cal., 968 F.2d at 920-21 (looking to the

purpose for which a document was prepared to determine whether it meets the "predecisional"

prong).

> A "predecisional" document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. A predecisional document is a part of the "deliberative process," if the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.

Lahr, 569 F.3d at 979–80 (quoting Assembly of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916,

920 (9th Cir.1992)).

Second, the matter to be protected must be deliberative, concerning opinions,

recommendations, or advice about agency policies. F.T.C. v. Warner Communications Inc., 742

F.2d 1156, 1161 (9th Cir. 1984). The privilege applies if material to be discovered reveals the

mental processes of decision makers. Assembly of State of Cal., 968 F.2d at 921. If material

sought to be discovered would "inaccurately reflect or prematurely disclose the views of the

agency," it would come within the deliberative process privilege. National Wildlife Federation v.

U .S. Forest Serv., 861 F.2d 1114, 1118 (9th Cir.1988) (citing Coastal States Gas Corp. v.

Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)).

/////

1    Although facts are not protected by the privilege, if the facts are inextricably interwoven

2    with the deliberative process, the entire matter may be protected by the privilege.  National

3    Wildlife Federation, 861 F.2d at 1116 (explaining that if the disclosure of facts would necessarily

4    reveal the deliberative process, the information is protected).  It is important to emphasize, as the

5    Ninth Circuit has, that the privilege applies to the deliberative process as well as deliberative

6    material.  National Wildlife Fed. v. U.S. Forest Service, 861 F.2d at 1118.  "In other words, the

7    document is considered to be part of the 'deliberative process' as long as it is 'actually....related

8    to the process by which policies are formulated.'"  Id.  (Emphasis in original).

9    The deliberative process privilege is a qualified one and can be overridden if the need for

10   accurate fact-finding outweighs the government's interest in non-disclosure.  F.T.C. v. Warner

11   Communications, Inc., 742 F.2d at 1161.  Three relevant factors are weighed to determine if

12   disclosure is appropriate:

13            1) the relevance of the evidence; 2) the availability of other
              evidence; 3) the government's role in the litigation; 4) the extent to
14            which disclosure would hinder frank and independent discussion
              regarding contemplated policies and decisions.
15   Id.

16   B. Analysis

17   Prior to the hearing, the EEOC submitted a declaration which did not reference this

18   privilege specifically but stated that it mailed letters to plaintiff explaining that some information

19   was withheld or redacted pursuant to FOIA exemptions.  (Connolly Dec., ¶ 7, ECF No. 60-3 at 2.)

20   This declaration by Deputy District Director Connolly attached letters to plaintiff which pre-date

21   the subpoenas at issue here, but which were sent in response to plaintiff's September, 2012 FOIA

22   request.  The EEOC's letters set forth the various privileges, including deliberative process

23   privilege, and then concludes the letters with a list of documents withheld pursuant to all of its

24   objections.  (ECF No. 60-3 at 10, 13.)  The EEOC list contains the title of the document, the

25   Charge or complaint number to which the document pertains, date of the document, what portion

26   /////

27   /////

28   /////

8

of the document was redacted or withheld, and the applicable exemption.  All documents were withheld under FOIA Exemption 5, 6 or 7(c).[7]  (Id.)

All FOIA exemptions are not applicable here, where plaintiff requested documents pursuant to a subpoena, which is the subject of his motion to compel, not pursuant to a FOIA request.

In any event, because the EEOC did not create a privilege log in regard to the subpoenas, the only account of documents withheld and their descriptions was in response to plaintiff's previous FOIA requests, and it is the only document akin to a privilege log filed by the EEOC. The withheld or redacted documents are listed as follows:

> 1.    Redacted Case Routing Sheet concerning Charge No. 550201101730, Dated: N/A, one column of deliberative analysis redacted, Page(s) withheld: N/A, Exemption 5.
>
> 2.    Redacted charge Detail Inquiry concerning Charge No. 550201101730, Dated: 092111, Processing Code in two locations redacted, Page(s) withheld: N/A, Exemption 5.
>
> 3.    Redacted Enforcement Investigator's Recommendation Memorandum to Local Director concerning Charge No. 550201101730, Dated: 062912, one column and nineteen lines of pre-decisional, deliberative analysis and recommendations redacted, Page(s) withheld: N/A, Exemption 5.
>
> 4.    Redacted Respondent's Reemployment List (Exhibit B) with other employees names concerning Charge No. 550201101730, Dated: FY11/12, all occurrences of names and Empl ID except for Charging Party personal and Proprietary information redacted, Page(s) withheld: N/A, Exemption 6, 7(c).
>
> 5.    Redacted Respondent's Layoff Impacted Employees List (Exhibit 9) with other employees names concerning Charge No. 550201101730, Dated: FY 11/12, all occurrences of names except

---

[7]  Exemption 5 protects from disclosure under FOIA documents consisting of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  "Exemption 5 covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  See Carter v. U.S. Dep't of Commerce, 307 F.3d 1084, 1088-89 (9th Cir.2002) (citation and quotation marks omitted).
Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(c) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy…."

1
2

> for Charging Party personal and proprietary information redacted, Page(s) withheld: N/A, Exemption 6, 7(c).

3

(ECF No. 60-3 at 10.)

4
5

> 1.    Redacted Case Routing Sheet concerning Charge No. 550201000655, Dated: N/A, one column of deliberative analysis redacted, Page(s) withheld, N/A, Exemption 5.

6
7

> 2.    Redacted Charge Detail Inquiry concerning Charge No. 550201000655, Dated: 021610, Processing Code in two locations redacted, Page(s) withheld: N/A, Exemption 5.

8
9
10

> 3.    Redacted Enforcement Investigator's Recommendation Memorandum to Director concerning Charge No. 550201000655, Dated: 062912, one column and thirty lines of pre-decisional, deliberative analysis and recommendations redacted, Page(s) withheld: N/A, Exemption 5.

11

(ECF No. 60-3 at 13.)

12     The EEOC's substantive objections based on the deliberative process privilege merely

13 describe the privilege and cite cases, but the EEOC has not analyzed how the privilege applies in

14 this case.  Although the listings above are similar to a privilege log, some of the entries do not

15 appear to be deliberative in nature, but appear to be claimed in order to protect the privacy of

16 third parties.  The EEOC has not claimed a privacy protection *herein*, and there is no support for

17 such a protection in the circumstances of this case.[8]  Furthermore, some entries may include facts

18 which are not protected unless they are inextricably interwoven with the deliberative process.

19     The deliberative process privilege may be asserted by the EEOC in the context of their

20 investigations.  EEOC v. Continental Airlines, Inc., 395 F.Supp.2d 738, 741 (N.D. Ill. 2005).  It

21 protects from disclosure documents "which reveal the 'give and take of the consultative

22 process.'"  Id. (citation omitted).  The court in Continental Airlines found that the EEOC's

23 investigative report was a predecisional document because it was created before the EEOC made

24 its decision and related to the process used to formulate policies.  It met the second factor because

25 it was created to assist the EEOC in its decision regarding the employee's charge and reflects the

26
27
28

---

[8] That the EEOC may have withheld documents for an out-of-court FOIA request based in part on privacy, does not *ipso facto* mean that it has raised privacy as a concern in this *court* proceeding. This is why privilege logs are important—a party must unambiguously assert a privilege and associate the privilege with a particular request.  The EEOC did no such thing here.

1    investigator's mental impressions about the information discovered during the course of the

2    investigation, as well as his recommendations concerning the charge.  Id.

3          At the hearing, the EEOC represented that some documents requested by the subpoena

4    (not the FOIA requests as responded to above), were not produced at all,[9] and others were

5    produced in redacted form.  The declaration submitted by the EEOC after the hearing, however,

6    states that all of the fact finding conference notes were produced, but that some were produced in

7    redacted form based on privileges asserted.  (Baldonado Dec., ¶ 10, ECF No. 73 at 3.)  Plaintiff,

8    however, described events surrounding the fact finding conference which create a question

9    whether further non-privileged documents exist.  For example, plaintiff stated that when he was

10   present at the fact finding conference, Malcolm Loungway told him that the answers were being

11   simultaneously typed on a computer by himself and Mimi Gentry, an intern with the EEOC.

12   Plaintiff stated that he received no such notes written by the EEOC representatives in the

13   production.  Plaintiff cited another example in which the EEOC's production included a quote

14   that Malcolm Loungway at the conference stated that he would allow defendant's attorney to

15   answer questions because he had done the research; however, at the conference itself, Loungway

16   said only that the defense attorney was allowed to answer questions, period.  The summation had

17   added the reason that was not expressed at the conference.  The aforementioned examples by

18   plaintiff do not constitute *facts* which must be disclosed.

19   _____

20   [9] Although the EEOC raised conciliation posture as an objection to production, and raised it at the hearing, claiming that some documents were not produced at all on this basis, it did not make any

21   argument on this ground in its opposition.  See ECF No. 60-1.  Title 42 U.S.C. § 2000e-5(b) provides that "[n]othing said or done during and as a part of such informal endeavors [conference, conciliation, and persuasion] may be made public by the Commission, its officers or employees,

22   or used as evidence in a subsequent proceeding without the written consent of the persons

23   concerned."

24          The EEOC cannot have it both ways.  To the extent the documents at issue are protected by the deliberative process privilege, they must be predecisional or prior to the formation of a policy.  To the extent they concern conciliation efforts, they must relate to the EEOC's

25   application of an *existing* policy.  See E.E.O.C. v. Swissport Fueling, Inc., 2012 WL 1648416,

26   *18 (D. Ariz. May 10, 2012).  Furthermore, the proceeding for which plaintiff seeks discovery is the fact finding conference, not a meeting for purposes of conciliation.  See E.E.O.C. v. Philip

27   Services Corp., 635 F.3d 164, 167 (5th Cir. 2011) (noting distinction between factual material related to the merits of the charge and proposals and counter-proposals of compromise made by

28   parties during conciliation).

Nevertheless, plaintiff at hearing also explained his belief that the EEOC omitted from production certain facts which came to light at the conference. For example, Theresa Parker admitted at the conference that she did not do her research until after plaintiff had complained, which is an important fact in this case, but which was not contained in the notes produced. Plaintiff also referred to a statement by Mike Miller who identified temporary funding and receiving that in early January, 2009 which precipitated the ability for plaintiff and other employees to start writing OJT contracts, which is a central fact in this case. These facts did not appear in the summation of notes from the conference received from the EEOC, according to plaintiff at the hearing.

Because plaintiff has presented pertinent facts not produced by the EEOC, which would not be shielded by the deliberative process privilege, the court directed the EEOC to submit a further declaration that these notes of facts do not exist, or that they have found them. On May 1, 2013, Michael Baldonado, District Director of the EEOC's San Francisco office, submitted a declaration stating not only that the EEOC had produced redacted fact finding conference notes on December 18, 2013, but also in regard to the issues raised at the hearing:

> 10. I have reviewed the administrative files related to Robinson's charges of discrimination. After a thorough search of the relevant hard-copy files and electronically stored files, the only documents responsive to Robinson's subpoenas were the Fact Finding Conference notes produced to Robinson by the EEOC on December 18, 2013. No other document responsive to Robinson's two subpoenas exists in Robinson's administrative files. Except for the redactions made pursuant to applicable privileges, said Fact Finding Conference notes are complete: no additional pages, statements, or admissions were omitted from the EEOC's production of said notes made to Robinson on December 18, 2013.

(ECF No. 73, ¶ 10.)

Also in response to the events at hearing, counsel for the EEOC filed a declaration on May 1, 2014, which addresses events in December, 2013. Sirithon Thanasombat states that she spoke to Malcolm Loungway on December 11, 2013, the day that the EEOC received plaintiff's subpoena, and that Loungway stated that Mimi Gentry had taken notes at the fact finding conference and emailed them to him. The EEOC was able to locate these notes and produced them to plaintiff in redacted form on December 18, 2013. (ECF No. 72, ¶¶ 5-7.) All of these

12

1  responses by the EEOC are qualified by its use of the term "redacted," which is the precise issue

2  here: did the EEOC redact factual information which is not privileged?

3        Based on plaintiff's representations at hearing, it appears that the EEOC may have

4  redacted facts which are not protected by the deliberative process privilege.  Furthermore, if the

5  EEOC has redacted names and identities, it has not claimed or shown support for privacy

6  protection, and this information is discoverable.

7        Therefore, the EEOC shall unredact all facts, names and identities from the documents

8  produced as a result of plaintiff's subpoena, which is limited to "recorded questions and answers

9  of witnesses" at the fact finding conference, and produce such documents in unredacted form to

10  plaintiff.  The EEOC is not required to unredact information which reflects its deliberative

11  process, including its mental impressions regarding testimony, but must unredact notes of the

12  testimony itself.

13  <u>CONCLUSION</u>

14        Accordingly, IT IS ORDERED that:

15      1.  Plaintiff's motion to compel the EEOC's compliance with subpoena (ECF No. 45) is

16  granted in part.  The EEOC shall produce all documents requested by the subpoena in unredacted

17  form which reflect facts, names and identities, as described herein, within **seven** days of this

18  order.

19      2.  The Clerk of the Court is directed to serve this order on counsel of record for the

20  EEOC at the address indicated in its filing.

21  Dated: May 14, 2014

22                 /s/ Gregory G. Hollows

23            UNITED STATES MAGISTRATE JUDGE

24

25

26  GGH:076/Robinson2783.EEOC

27

28