1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY W. ROBINSON,                          No.  2:12-cv-2783 MCE GGH PS

12                Plaintiff,

13        v.                                        ORDER

14   COUNTY OF SAN JOAQUIN,

15                Defendant.

16

17          Presently before the court is plaintiff's April 11, 2014 motion to compel responses to

18   interrogatories and production of documents, as narrowed by this court's order of April 16, 2014.

19   (ECF No. 67, 68.)  Because a portion of the motion sought to compel discovery beyond the

20   discovery cutoff, [1] only that portion of the motion which pertained to plaintiff's previous motion

21   to compel, filed January 28, 2014, (ECF No. 35), was permitted.

22          The two matters for consideration are plaintiff's request for emails dated between

23   November 14, 2007 and July 1, 2011, in which his name is referenced (document request number

24   1),[2] and the report completed by Spectrum Consulting in 2007/2008 (document request number

25   3).  This order concerns only the Spectrum Consulting Report, which was submitted in draft[3]

---

[1]   The scheduling order as modified on March 19, 2014 required discovery motions to be heard
by April 10, 2014.  (ECF No. 49.)
[2]   This document request concerning emails will be addressed in a future order.
[3]   Defendant previously represented that the final version is not in its possession.

1

form for *in camera* review on April 22, 2014.  The undersigned has now reviewed that report, and issues the following order.

BACKGROUND

      This action concerns plaintiff's claim for wrongful termination and failure to promote based on racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act.[4]  According to the complaint, plaintiff, an African-American, was employed by the County of San Joaquin ("County") from October, 1994 to July 1, 2011, and from August 3, 1998 to July, 2011 in a civil service position.[5]  (Compl. at 2.)  Plaintiff asserts that defendant's excuse of business necessity due to funding loss as the basis for its decision was a pretext for his termination.

      Defendant represents that plaintiff was terminated due to budget cuts in the County, and job eliminations in particular in the department where plaintiff worked.  Defendant denies singling plaintiff out for a performance evaluation, and states that he was offered jobs elsewhere in the County.

DISCUSSION

      In the order issued February 24, 2014, the court discussed the discovery request as raised in the original motion to compel and resolved it as follows:

> Document Request No. 3 – A copy of the report created by Spectrum Consulting in 2007/2008.
>
>     Defendant claims attorney client privilege over the investigation report prepared by Jaci Southward as it was issued and addressed to David Wooten, County Counsel.  According to the County, this investigation concerned conduct in the EEDD department and did not pertain to specific conduct towards plaintiff himself.  Defendant states that it did locate a draft which it did not produce, but has not located the final report which may have been destroyed because it is probably seven years old.
>
>     The County has not provided a privilege log as required, explaining in court that a log was unnecessary because there is only one document at issue and plaintiff is already aware of the author of the report and that it was done at the request of County Counsel.  The County then conceded at hearing that it was not sure whether

---

[4]  State law claims were previously dismissed, as was defendant John Solis.
[5]  Other records indicate that plaintiff worked for the County from August, 1998 to July 1, 2011 as an Employment Services Specialist I and II at in the Employment and Economic Development Department.  (ECF No. 39 at 2.)  Plaintiff was laid off on July 1, 2013.  (Id.)

1
2
3

the report pertained to discrimination in any respect.  Therefore, the County shall file and serve a privilege log pertaining to this report, and shall spell out the subject matter of the document.  If the document addresses discrimination at all, then it is relevant to this litigation.

4

(ECF No. 43 at 4-5.)

5

On March 6, 2014, the County filed its privilege log in regard to the Spectrum Consulting

6

Report.  The privilege log describes this document, for which the County is claiming attorney-

7

client privilege and work product protection, as: "County Counsel initiated an investigation in

8

response to receipt of an anonymous email which made accusations pertaining to the Employment

9

Development Department ('EEDD').  Only a draft of the investigation has been located.  It

10

addresses allegations of prefer[]ential treatment."  (ECF. No. 44-1 at 7.)

11

On April 11, 2014, plaintiff filed a renewed motion to compel in regard to this document

12

request, among others.  He contends that the consultant interviewed him and other African

13

American employees in his department concerning their perceptions of discrimination.  (ECF No.

14

67 at 8.)  Plaintiff identifies Deborah Foster, Lorraine Thompson, and Sandra Howell as such

15

employees.  (Id.)  As a result of this filing, the court determined that the document itself should be

16

reviewed in camera.  Based on review of the draft report which has now been submitted to

17

chambers, as well as the County's stated objections to production, the court finds that the report is

18

not protected by the attorney client privilege and does not constitute work product.

19

I.  Attorney-Client Privilege

20

The County claims that the report itself, as well as any opinions or strategies of County

21

Counsel pertaining to the document, are protected by the attorney-client privilege to the extent

22

they were transmitted to the County by County Counsel.  This order only involves the report itself

23

as no other documents were identified in a privilege log.

24

"The attorney-client privilege protects confidential communications between attorneys

25

and clients, which are made for the purpose of giving legal advice."  U.S. v. Richey, 632 F.3d

26

559, 566 (9th Cir. 2011) (internal citations omitted).  "Issues concerning application of the

27

attorney-client privilege in the adjudication of federal law are governed by federal common law."

28

U.S. v. Ruehle, 583 F.3d 600, 608 (9th Cir. 2009).  "Under federal law, the attorney-client

1  privilege is strictly construed." Id. at 609.  The Ninth Circuit has set forth the elements of the

2  attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional

3  legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in

4  confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by

5  himself or by the legal adviser, (8) unless the protection be waived.  Richey, 632 F.3d at 566.

6  "The party asserting the attorney-client privilege has the burden of establishing the relationship

7  and privileged nature of the communication." Id.; see also Ruehle, 583 F.3d at 609 (stating that

8  the party asserting the privilege is "obliged by federal law to establish the privileged nature of the

9  communications and, if necessary, to segregate the privileged information from the non-

10  privileged information").

11       Here, the report was generated by an outside consultant, retained by the County, and

12  submitted to County Counsel.  There is no evidence that the consultant was County Counsel's

13  "client." Cf United States v. Graf, 610 F.3d 1148,1159 (9th Cir. 2010) (in order for a consultant's

14  advice to be protected by attorney-client privilege, the consultant must be the "functional

15  employee" of the client); Media-Tek Inc. v Freescale Semi-Conductor Inc., 2013 WL 5594474 *2

16  (N.D. Cal. 2013) ("For the attorney-client privilege to apply, MediaTek's communications with

17  the third-party consultant must be related to MediaTek's receipt of legal advice from its

18  lawyers.")  Therefore, the report does not qualify as a communication between an attorney and a

19  client and is not protected by this privilege.[6]

20       II.  Work Product Doctrine

21       Fed. R. Civ. P. 26(b)(3) provides, in part, that:

22            (A) Ordinarily, a party may not discover documents and tangible
             things that are prepared in anticipation of litigation or for trial by or
23            for another party or its representative (including the other party's
             attorney, consultant, surety, indemnitor, insurer, or agent).  But,
24            subject to Rule 26(b)(4), those materials may be discovered if: (i)
             they are otherwise discoverable under Rule 26(b)(1); and (ii) the
25            party shows that it has substantial need for the materials to prepare
             its case and cannot, without undue hardship, obtain their substantial
26            equivalent by other means.

27  _____

[6] Of course, the communication of the report to the Board of Supervisors, assuming it was
28  communicated, would be privileged, but not the report itself.

4

1    Thus, "to qualify for protection against discovery under Rule 26(b)(3), documents must

2    have two characteristics: (1) they must be prepared in anticipation of litigation or for trial and (2)

3    they must be prepared by or for another party or by or for that other party's representative." In re

4    Grand Jury Subpoena (Mark Torf/Torf Environmental Management) ("Torf"), 357 F.3d 900, 907

5    (9th Cir. 2004).  The work product doctrine applies to investigators or agents working for

6    attorneys provided that the documents were created in anticipation of litigation.  Id. (citing United

7    States v. Nobles, 422 U.S. 225, 239 (1975)).

8    In this case, there is no question that the report was generated as a result of an anonymous

9    complaint which caused the County to retain Spectrum Consulting.  Spectrum Consulting was to

10   perform an investigation and provide a report to County Counsel.  County Counsel defined the

11   scope of the investigation.  (ECF No. 70 at 2.)  The draft report indicates that Jaci Southward of

12   Spectrum Consulting planned interviews with approximately nine to twelve persons named in the

13   complaint as part of her investigation.  Her report was submitted to County Counsel on December

14   4, 2007.

15   Instead, the issue is whether the documents at issue were created in anticipation of

16   litigation.  The County argues that because the report was completed as a result of the anonymous

17   complaint, and not in the routine course of business, it is necessarily work product.  The County

18   also contends that the report "necessarily discloses County Counsel's strategy and legal theories

19   pertaining to the matter" and is therefore protected.

20   It is not necessarily true, or even probable, that litigation would have been anticipated

21   from one anonymous complaint.  The report could have been sought to remedy the matter

22   internally as part of the County's own employment procedures to improve its weaknesses, for

23   example.  The County has not shown otherwise.  In fact, the timeline of this case is persuasive in

24   indicating that the County did not anticipate this litigation.  The anonymous complaint is dated

25   May 8, 2007.  (Email Attachment to *In Camera* document.)  The Spectrum Report was submitted

26   on December 4, 2007, according to the draft submitted for *in camera* review.  Plaintiff's first

27   EEOC charge was not filed until February 10, 2010, over two years later.  Plaintiff was

28   terminated in July, 2011, and his second EEOC charge was filed in September, 2011.  This action

5

1    was filed on November 13, 2012.  Additionally, the report is based on an anonymous complaint.

2    This is not the situation where an employee who was terminated, and who had threatened

3    litigation, made the complaint.  There is no evidence that plaintiff made the complaint.

4         Moreover, the draft report itself does not reflect the County's strategies or legal theories in

5    any respect.  Rather, it was created by the consulting firm which was tasked by County Counsel

6    with conducting a preliminary investigation and presenting its findings.

7         The Ninth Circuit has held that "a document should be deemed prepared in anticipation of

8    litigation and thus eligible for work product protection under Rule 26(b)(3) if in light of the

9    nature of the document and the factual situation in the particular case, the document can be fairly

10   said to have been prepared or obtained because of the prospect of litigation."  Torf, 357 F.3d at

11   907.  This standard "does not consider whether litigation was a primary or secondary motive

12   behind the creation of a document.  Rather, it considers the totality of the circumstances and

13   affords protection when it can fairly be said that the document was created because of anticipated

14   litigation and would not have been created in substantially similar form but for the prospect of

15   that litigation."  Id. at 908.  "When there is a true independent purpose for creating a document,

16   work product protection is less likely," but documents are entitled to such protection when, taking

17   into account the facts surrounding their creation, "their litigation purpose so permeates any non-

18   litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a

19   whole."  Id. at 908-10.  In evaluating whether documents were generated by a consultant in

20   anticipation of litigation, "courts have weighed factors such as the timing of retention of the non-

21   testifying expert in relation to the litigation at issue and the existence of evidence including

22   supporting affidavits and engagement letters."  U.S. Inspection Services, Inc. v. NL Engineered

23   Solutions, LLC, 268 F.R.D. 614, 619 (N.D. Cal. Jul. 12, 2010).

24        In light of these principles and for the reasons discussed above, the court finds that the

25   Spectrum Consulting Report was not created in anticipation of litigation.  The fact that there was

26   one anonymous complaint is too general and amorphous to be considered a legitimate impetus for

27   litigation.  To be protected as work product, there must be a real possibility of litigation.

28   /////

6

1    III.  Relevance

2        The County further contends that the report is not essential to plaintiff's case, in that it

3    was created outside the limitations period on plaintiff's claims, and during a time period when

4    plaintiff was supervised by individuals other than the individuals who supervised him during the

5    period related to his current complaint.

6        Unless otherwise limited by court order, parties may obtain discovery regarding any non-

7    privileged manner that is relevant to any party's claim or defense—including the existence,

8    description, nature, custody, condition, and location of any documents or other tangible things ...

9    Relevant information need not be admissible at the trial if the discovery appears reasonably

10   calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b); See Survivor

11   Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir.2005).  Evidence is relevant if it

12   has any tendency to make a fact of consequence more or less probable than it would be without

13   the evidence.  Fed. R. Evid. 401(emphasis added). For purposes of discovery, relevancy is

14   defined very broadly.  Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998).

15       The 2007 report was created only two years and two months prior to plaintiff's first EEOC

16   charge, and is therefore not too remote in time to be excluded based on relevance.  The County

17   may be correct that the report addresses a time period when plaintiff was not supervised by the

18   same persons involved in his supervision during the time period alleged in his complaint;

19   however, this conclusion is not at all certain.  The report refers to persons who appear to have

20   supervised plaintiff during the time period at issue in his complaint.  In any event, since the rules

21   of relevance are very broad and may include evidence that has any tendency whatsoever to make

22   a fact more or less probable, this report comes within that definition.[7]  Furthermore, the report

23   itself is directly relevant to plaintiff's discrimination claim.  Although this court previously

24   advised the County that "if the document addresses discrimination at all, then it is relevant to this

25   litigation," the County responded (lamely) that the report addressed allegations of "preferential

26   treatment"—as if there were a significant difference between the two given the tenor of the

27

28
[7] While it is true that the proximity of a report to a later stated discrimination claim could be so
attenuated as to make the report irrelevant to the claim, such is not the case here.

1  report.  Now that the report has been reviewed, the County's response appears to have been

2  puzzling at best, and disingenuous at worst.

3      In regard to the County's claim that plaintiff has alternative methods of obtaining

4  information pertaining to the time period of the report and the anonymous complaint, the County

5  is informed only that the fact that the final report could not be found raises a red flag.  At hearing,

6  County Counsel represented that it had done a good faith search to locate the final report.  When

7  the court questioned whether the County had asked Spectrum Consulting for a copy of it, counsel

8  replied in the negative.  This response is telling.

9      Because the Spectrum Consulting Report is relevant and not protected by the attorney-

10  client privilege or work product doctrine, it shall be produced to plaintiff.

11  CONCLUSION

12      Accordingly, IT IS ORDERED that:

13      1.  Plaintiff's motion to compel further discovery responses, filed April 11, 2014, (ECF

14  No. 67), is granted in part.

15      2.  Within **seven** days of this order, defendant shall produce the Spectrum Consulting draft

16  report to plaintiff.  The report shall be used *only* for the purposes of this litigation and shall be

17  returned to the County upon a final resolution in this case.

18      3.  In the event there is to be further need for the court's review of this report, the Clerk

19  shall file the court's copy of the Spectrum Report under seal.[8]

20  Dated: May 20, 2014

21                              /s/ Gregory G. Hollows

22                      UNITED STATES MAGISTRATE JUDGE

23

24  GGH:076/Robinson2783.dsy(2)

25

26

27  _____

28  [8] The privacy interests of those referenced in the report are sufficiently protected by this filing under seal.

8