UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY W. ROBINSON,

         Plaintiff,

      v.

COUNTY OF SAN JOAQUIN,

         Defendant.

No.  2:12-cv-2783 MCE GGH PS

FINDINGS AND RECOMMENDATIONS

Presently pending before this court is defendant's motion for summary judgment, filed March 24, 2014.  In light of discovery matters decided after the motion and opposition were filed, the court permitted plaintiff to file a supplemental opposition and defendant to file a reply after those motions were decided and discovery produced.  Having reviewed all of the briefing,[1] the court now issues the following findings and recommendations.[2]

INTRODUCTION AND SUMMARY

This action concerns plaintiff's claim for wrongful termination based on racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act.[3]  While at times discrimination and retaliation claims will relate to entirely separate incidents, the complaint in

---

[1]  Oral argument was determined to be unnecessary.  (ECF No. 108.)
[2]  On January 5, 2015, plaintiff sent an email to the chambers of the undersigned which constitutes *ex parte* communication, and will not be considered.
[3]  State law claims were previously dismissed, as was defendant John Solis.

1

this case makes clear that both claims are directed to plaintiff's termination from work due to a layoff.  In this sense, the discrimination and retaliation claims are one in the same claim.

In its summary judgment motion, defendant represents that plaintiff was terminated, aka laid off, due to budget cuts in the County, and job eliminations in particular in the Employment and Economic Development Department ("EEDD") department where plaintiff worked.  Plaintiff asserts that defendant's excuse of business necessity due to funding loss as the basis for its decision was a pretext for his termination.

Although there are many facts presented by both parties and fleshed out through the court's review, only a few significant and undisputed facts form the lynchpin for the court's recommendation, to wit:  Plaintiff's seniority was not affected by his one unsatisfactory performance evaluation.  The County had a racially neutral policy for layoffs which was based on seniority only.  That policy was followed and seniority was the only basis for the County's decision in the layoffs which resulted in plaintiff's termination.  The layoffs occurred as a result of budget reductions and decreased funding to the department where plaintiff worked.  All of the other allegations and disputed facts relating to discrimination/pretext had no bearing on plaintiff's layoff which was based strictly on seniority.  Because the material facts are undisputed, defendant's motion for summary judgment should be granted.

BACKGROUND

I. The Complaint[4]

According to the complaint, filed November 13, 2012, plaintiff, an African-American, was employed by the County of San Joaquin ("County") in a civil service position from 1998 to 2011.  (Compl. at 2.)  Plaintiff alleges that defendant Solis, the EEDD Director, targeted plaintiff for dismissal even though plaintiff had more seniority than forty other employees.  He further alleges that the EEOC found no basis for his two complaints, filed in 2003 and 2007, and then prevented his appeals from being heard.  (Id.)  Plaintiff asserts that he received an unsatisfactory evaluation in December, 2009, for writing only one OJT (on the job training) contract and four

---

[4]  The complaint is not verified.

1   job orders, but he claims that in fact he wrote four OJT contracts and fourteen job orders.  As a

2   result, plaintiff refused to sign the evaluation, and filed another EEO complaint on January 26,

3   2010.  As a result of the unsatisfactory evaluation, plaintiff claims he lost "seniority hours," and

4   was selected for termination by Director Solis on May 31, 2011.  Plaintiff then filed another EEO

5   complaint for retaliation on September 16, 2011.  (Id. at 3.)

6        The complaint further alleges that defendants then developed criteria to permit lay-offs in

7   the event of staff reductions based on consideration of individuals who had received

8   unsatisfactory evaluations regardless of seniority.  According to the complaint, this criteria was

9   not applied to plaintiff's peers who were not African-American.  (Id. at 4.)  Plaintiff asserts that

10  defendants' excuse of business necessity due to funding loss was a pretext for his termination.

11  Although the complaint contains evidentiary submissions to support the claim for wrongful

12  pretext, e.g., a promotion denied to him in the distant past as a result of an alleged discriminatory

13  evaluation, the claims going forward after resolution of defendants' motion to dismiss are for

14  discrimination and retaliation under Title VII of the Civil Rights Act.  The County is the sole

15  remaining defendant.  Again, a review of the complaint discloses that the two claims are but one

16  seeking a remedy for the alleged wrongful layoff.[5]

17       II.  Defendant's Undisputed Facts[6]

18       Plaintiff began his employment with the County in July, 1998 and was initially hired as

19

20  [5]  The undersigned is not aware of any separate EEOC proceedings on the subject of a failure to
    promote which can be at issue here.  The 2004 EEOC complaint regarding a failure to promote
21  cannot be, and is not, the subject of this 2012 litigation.

22  [6]  Plaintiff has not filed a statement of undisputed facts as required Eastern District Local Rule
    260.  Nor has he admitted or denied defendant's facts.  Local Rule 260(a) requires that "[e]ach
23  motion for summary judgment or summary adjudication be accompanied by a 'Statement of
    Undisputed Facts' that shall enumerate discretely each of the specific material facts."  The
24  opposition is required to reproduce the itemized facts and admit or deny such facts with reference
    to evidence. E. D. Local Rule 260(a).  "The opposing party may also file a concise 'Statement of
25  Disputed Facts,' and the source(s) thereof in the record, of all additional material facts as to
    which there is a genuine issue precluding summary judgment or adjudication."  Id., 260(b).
26  Although plaintiff has chosen to "agree" or "disagree" with certain points made in individual
    declarations, such argument does not satisfy the Local Rule's requirement concerning facts, as
27  opposed to argument.  Nevertheless, this failure will be excused as plaintiff is appearing in pro se
    and his evidence does not change the outcome of the case.

28

3

1   Employment Specialist I in the EEDD.  He was promoted to Specialist Level II on August 2,

2   1999.  His employment ended on July 4, 2011.  Disputed but asserted by defendant is the reason

3   for the termination, a reduction in work force.  (Def.'s Statement of Undisputed Facts ("SUF") ¶

4   1.)  The County underwent budget reductions between 2008 and 2011, eliminating 1,000 of the

5   County's 6,200 positions during this time.  (Id. ¶ 2.)  Although the County does not state how

6   many of those 1,000 positions were in the EEDD, EEDD Director Solis did eliminate six

7   positions in March, 2011, none of which were job developer positions.  In May of 2011, Solis

8   was forced to eliminate an additional 13 positions, due to less funding than anticipated.  Of those

9   13 positions, six were job developer positions.  (Id. ¶¶ 2 – 4.)  In total during the 2011-2012 fiscal

10  year, EEDD eliminated 31 positions.[7]  (Goodman Dec.; ¶ 13, ECF No. 53 at 3.)  The County's

11  Layoff Policies and Procedures, which are ultimately undisputed,[8] outline the criteria to

12  determine who is laid off, and is based on seniority only.  (SUF ¶ 5; Goodman Dec., Ex. P; ECF

13  No. 53-15.)  Plaintiff was laid off because he had less seniority than other employees and did not

14  have bumping rights.[9]  (SUF ¶ 7.)

15      Plaintiff filed his first complaint of discrimination based on race, political affiliation and

16  union position as shop steward, through a Civil Service Rule 20 complaint in March, 2004,

17  alleging denial of promotion.  (Id. ¶ 30.)  After the Civil Service Commission found against

18  plaintiff, and his appeal was adversely decided, he filed an EEOC complaint in 2004.  (Id.  ¶ 31.)

19      EEDD positions were deleted in the 2005-2006 year; however, plaintiff's position was not

20  eliminated.  (Id. ¶ 32.)  In 2005, plaintiff was transferred from the Tracy Center to the Stockton

21  Center.  Maria Castellanos became his supervisor at this time, and Allet Williams was Ms.

22  Castellanos' superior.  (Id. ¶¶ 33, 36.)  Plaintiff was angry and threatening toward Ms.

23  Castellanos.  He stayed late on one occasion until he and Ms. Castellanos were the only

24  [7]  Including vacant positions, the total number of positions eliminated in 2011 was 33.  (SUF ¶ 4.)
25  [8]  Plaintiff's exhibits include Civil Service Rules and "Employee Performance Guidelines" which
    appear to indicate that terminations may be based on performance.  (ECF No. 66 at 78, 79.)
26  But plaintiff was not terminated in the sense of being fired for cause; his termination came about
    because of budget induced layoffs.
27  [9]  According to defendant, seniority was unclear because several of EEDD's employees came
    from other departments.  Further, employees with more seniority were permitted to bump down to
28  a lower level.  (Id. ¶¶ 5, 6.)

1   employees in the building.  He followed her to the parking lot, acting in an intimidating manner.[10]

2   (Castellanos Dec. ¶ 4.)

3        Businesses assigned to plaintiff also complained about him.  For example, one company

4   flew in from out of state for a job fair, only to learn that its application had not been processed

5   properly and it did not have a spot reserved at the fair.  This company requested to be transferred

6   to a different job developer.  (SUF ¶ 39.)  When Ms. Castellanos informed plaintiff of the

7   transfer, he stated that her email was threatening.  (Id. ¶ 40.)  When Ms. Castellanos requested a

8   job report which included statistics from plaintiff, he complained that it was inappropriate.  He

9   further complained that a separate report entitled "report card" was inappropriate.  (Id. ¶¶ 42-44.)

10       Plaintiff filed another Civil Service Rule 20 complaint in 2007 alleging that Ms.

11  Castellanos harassed, accused, and threatened him, which the County found to be unsubstantiated.

12  (Id. ¶ 45.)

13       In February, 2010, plaintiff filed an EEOC charge for retaliation relating to his 2009

14  performance review.  (Id. ¶ 24; Goodman Dec., Exs. K, L.)  Plaintiff filed another EEOC charge

15  for retaliation on September 20, 2011.  (Id. ¶ 8; Goodman Dec., Ex. Q.)  He filed an additional

16  charge for discrimination and retaliation on January 12, 2012.  (Id.)

17       Plaintiff's performance review in December, 2009 rated him as unsatisfactory based on

18  his development of substantially less OJT contracts than his counterparts.[11]  (SUF ¶¶ 10 - 15.)

19

_____

20  [10]  Plaintiff argues that none of this alleged behavior was ever disciplined; nor was it raised against him until recently in this case.  (ECF No. 66 at 4.)  Because it is determined herein that the only adverse action against plaintiff was his layoff, which was based solely on seniority, these potentially disputed facts are not material to the decision.  See Discussion infra.

21

22  [11]  The two employees who were similarly situated to plaintiff in terms of job duties and OJT contracts were Lori Costa Rios, who wrote approximately 20 OJT contracts, and Charles Self, who wrote approximately 16 OJT contracts.  (SUF ¶¶ 13-14.)  Plaintiff was associated with only four OJT contracts, and plaintiff's supervisor understood that he had developed only one of these contracts himself.  (Id. at ¶¶ 11-12.)  Plaintiff has not submitted evidence to dispute this submission.  Although he refers to an email indicating that he wrote five OJT contracts, (ECF No. 106 at 4), the email does not identify him as the subject.  (ECF No. 66 at 63.)  Instead, plaintiff alleges that Ms. Parker prevented him from writing OJT contracts while permitting his peers to write them.  (Id. at 5.)  Plaintiff does not provide evidence or potential evidence to support this claim.  Plaintiff does discuss other employees and the number of OJT contracts written by them, which in some instances were fewer than the number plaintiff wrote.  (Id. at 6-7.)  These facts are therefore disputed, but their materiality will be addressed in the discussion infra.

23

24

25

26

27

28

During this same period, a Hispanic employee also received an unsatisfactory review.  (Id. ¶ 16.)
Although plaintiff's supervisor, Teresa Parker, received complaints from two businesses about
plaintiff's work, she did not include them in the review because they were outside the pertinent
time period.  (Id. ¶ 17.)  This negative evaluation resulted in no loss of seniority credits.  (Id. ¶
20.)

Plaintiff's special performance review to assess his progress, covering the period
December 18, 2009 to March 18, 2010 was satisfactory.  Plaintiff refused to sign it.  (Id. ¶ 22.)
Plaintiff's regular performance review, covering the period November, 2009 to November, 2010,
was satisfactory, but again he refused to sign it.  (Id. ¶ 23.)

III.  Findings of Fact

The aforementioned facts have been fleshed out, along with plaintiff's version of the facts
as raised in his oppositions.  The court finds the following ultimate facts to be significant to the
decision and undisputed.

1.  The County's Layoff Policy was based on seniority only.  (SUF ¶ 5.)

2.  Plaintiff did not lose seniority as a result of his unsatisfactory evaluation in 2009.  (SUF ¶ 20.)

3.  The County's layoff policy based on solely on seniority was implemented in plaintiff's layoff
in 2011.  (SUF ¶ 7.)

4.  Plaintiff was laid off because he had less seniority than other employees and did not have
bumping rights.  (SUF ¶ 7.)

5.  Budget cuts and lack of funding caused the round of layoffs which resulted in plaintiff's
separation.  (SUF ¶¶ 2-4.)

DISCUSSION

I.  Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in
order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when it is
demonstrated that there exists "no genuine dispute as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment

1   practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 585-86. In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Matsushita, 475 U.S. at 586. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. The evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. See Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 586-87 (internal citation and quotation omitted).

1    II.   Analysis

2          A.   Race Discrimination Under Title VII[12]

3          Title VII provides that an employer may not "discriminate against any individual with

4    respect to his compensation, terms, conditions, or privileges of employment, because of such

5    individual's race ... or national origin."  42 U.S.C. § 2000e–2(a)(1).  In disparate treatment cases,

6    plaintiffs can prove intentional discrimination through direct or indirect evidence.  "Direct

7    evidence is evidence which, if believed, proves the fact of discriminatory animus without

8    inference or presumption."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)

9    (citation and internal quotation and editing marks omitted).  Because direct proof of intentional

10   discrimination is rare, disparate treatment claims may be proved circumstantially.  See

11   Dominguez–Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005).  To do so,

12   plaintiff must satisfy the burden-shifting analysis set out by the Supreme Court in McDonnell

13   Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973), and Texas Dept. of

14   Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981).  Dominguez–Curry, 424

15   F.3d at 1037.

16         Plaintiff has provided no direct evidence of racial discrimination or harassment that, if

17   believed, proves the fact of discriminatory animus without inference or presumption.  Thus,

18   plaintiff's claims for race discrimination and retaliation under Title VII are subject to the

19   McDonnell Douglas burden-shifting analysis used at summary judgment to determine whether

20   there are triable issues of fact for resolution by a jury.  See McDonnell Douglas, 411 U.S. 792.

21   Under McDonnell Douglas,

22               a plaintiff must first establish a prima facie case of discrimination
             [or other illegal conduct].  The burden then shifts to the employer to
23           articulate a legitimate, nondiscriminatory reason for its employment
             action.  If the employer meets this burden, the presumption of
24           intentional discrimination [or other illegal conduct] disappears, but
             the plaintiff can still prove disparate treatment by, for instance,
25

26   [12]  All state law claims were dismissed on August 5, 2013.  (ECF No. 24.)  Defendant' briefing
     includes a heading regarding plaintiff's retaliation claim under FEHA; however, this is probably
27   an inadvertent error as the argument for this section relies on Title VII.  (ECF No. 51-1 at 20.)  A
     review of the complaint indicates no such claim exists.  Plaintiff's claim for retaliation is brought
28   under Title VII only.

offering evidence demonstrating that the employer's explanation is pretextual.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n. 3, 124 S. Ct. 513 (2003) (citations omitted).

Plaintiff has the burden of establishing a prima facie case by showing that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett–Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). The Ninth Circuit has held that a plaintiff's burden in establishing a prima facie case of discrimination is "minimal." Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005).

If plaintiff proffers sufficient evidence to establish genuine issues of material fact, the burden shifts to defendant. Raytheon Co., 540 U.S. at 50. Defendant's burden is to articulate a legitimate, nondiscriminatory reason for its employment action. Id. If defendant meets its burden, the only remaining question would be whether plaintiff could prove sufficient evidence from which a jury could conclude that defendant's stated reason was in fact pretext. Id. at 51. Under the McDonnell Douglas framework, "[t]he burden of persuasion, as opposed to production, however, remains with the plaintiff at all times." Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir.2004). Plaintiff must ultimately show that his race or national origin was the "motivating factor" for the challenged employment practice. 42 U.S.C. § 2000e–2(m); Staub v. Proctor Hosp., 562 U.S. 411, 131 S.Ct. 1186, 1191 (2011).

"[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998)). Plaintiffs may rely on the same evidence used to establish a prima facie case or put forth additional evidence. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000); see also Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994). "[I]n those cases where the

1  prima facie case consists of no more than the minimum necessary to create a presumption of

2  discrimination under <u>McDonnell Douglas</u>, plaintiff has failed to raise a triable issue of fact."

3  <u>Wallis</u>, 26 F.3d at 890.  When plaintiffs present direct evidence that the proffered explanation is a

4  pretext for discrimination, "very little evidence" is required to avoid summary judgment.  <u>EEOC</u>

5  <u>v. Boeing Co.</u>, 577 F.3d 1044, 1049 (9th Cir.2009).  In contrast, when plaintiffs rely on

6  circumstantial evidence, "'that evidence must be specific and substantial to defeat the employer's

7  motion for summary judgment.'"  <u>Id.</u>  (quoting <u>Coghlan</u>, 413 F.3d at 1095).

8          The Ninth Circuit has instructed that district courts must be cautious in granting summary

9  judgment for employers on discrimination claims.  <u>See Lam v. Univ. of Hawai'i</u>, 40 F.3d 1551,

10  1564 (9th Cir. 1994) ("'We require very little evidence to survive summary judgment' in a

11  discrimination case, 'because the ultimate question is one that can only be resolved through a

12  "searching inquiry"—one that is most appropriately conducted by the factfinder.'") (quoting

13  <u>Sischo–Nownejad</u>, 934 F.2d at 1111.

14              1.  <u>The Only Adverse Action in This Case Was Plaintiff's Layoff</u>

15          As a preliminary matter in regard to the third prong, what constitutes an adverse action in

16  this case must be defined, as the parties dispute whether plaintiff's unsatisfactory evaluation in

17  2009 was an adverse action.  Although plaintiff alleges that he lost seniority credits as a result of

18  that evaluation, he has pointed to no evidence in support.  Meanwhile, defendant points to

19  plaintiff's deposition in which he finally conceded that he did not lose seniority hours as a result

20  of this evaluation, based on a list of seniority hours prepared by Human Resources for this time

21  period, reflecting no loss of seniority hours.  (Bossuat Dec., Ex. A at 91-92; ECF No. 52-1 at 27-

22  28.)  Defendant has separately provided evidence that plaintiff lost no seniority hours as a result

23  of this evaluation.  (Goodman Dec., ¶ 11, Exs. M, N, O; ECF No. 53 at 3.)

24          Plaintiff, on the other hand, has provided Civil Service Rule 13, which provides for uses

25  of Employee Performance Reports:

26              Employee Performance Reports shall become a part of the official
             personnel record of the employee.  Employee Performance Reports
27              may be considered along with other pertinent information when a
             salary step increase or a disciplinary action is being contemplated.
28

1

The Employee Performance Reports shall be used for layoff purposes in accordance with Section 17(a), 3.

2

3

In addition, the last available Performance Report must have an overall rating of at least satisfactory if the employee is

4

a.  To be granted a Leave of Absence.

5

b.  To participate in a promotional examination.

6

c.  To be transferred, transfer-promoted, promoted, reinstated, or restored to an eligible list.

7

8

ECF No. 66 at 78.)

9

Plaintiff has also submitted a document entitled, "Employee Performance Guidelines,"

10

which states in part that "performance evaluations are necessary" to "document employee

11

performance and provide support for merit increases, promotions, or terminations." (Id. at 79.)

12

To the extent that defendant objects to plaintiff's evidence as lacking foundation and/or

13

inadmissible hearsay, these objections must be overruled insofar as they are made to plaintiff's

14

submission of objective evidence such as the documents referenced above.  Evidence which is not

15

admissible, but which *could be* admissible at trial, must be considered.  See Fraser v. Goodale,

16

342 F.3d 1032, 1036 (9th Cir. 2003) (considering evidence on summary judgment which could be

17

presented in an admissible form at trial); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004)

18

(considering pro se plaintiff's evidence at summary judgment where it is "based on personal

19

knowledge and set[s] forth facts that would be admissible in evidence, and where [plaintiff]

20

attested under penalty of perjury that the contents of the motions or pleadings are true and

21

correct").[13]  However acceptance of plaintiff's speculation, opinion, or evidence for which

22

plaintiff has no personal knowledge is another matter.  Nothing in the above cited cases permits

23

*ipse dixit* by plaintiff to become admissible to defeat summary judgment.  Plaintiff must

24

demonstrate that his assertions are more than mere speculation or opinion.  And, of course, even

25

if plaintiff has submitted evidence which could be made admissible, the evidence must be

26

material to the issues considered.

27

Accordingly, plaintiff's otherwise inadmissible objective evidence may be considered for

28

[13]  Plaintiff's oppositions are not signed under penalty of perjury.  Nor is the complaint verified.

1   purposes of summary judgment.  Superficially these rules and guidelines appear to contradict

2   defendant's evidence that the 2009 performance evaluation was not considered in the layoff

3   determination.  Nevertheless, when read in proper context, the guidelines refer to those situations

4   where termination is based on cause; it does not appear to relate to the circumstance of a layoff.

5   Plaintiff concedes, both in his deposition and in his supplemental opposition, that he did not lose

6   seniority credits on account of the evaluation at issue.[14]  (ECF Nos. 52-1 at 27-28, 106 at 7.)  The

7   court so finds.

8          Plaintiff does assert that in any event, based on the civil service rules, defendant must

9   have had an "invidious" purpose in giving him an unsatisfactory evaluation, even though it failed

10  to report the evaluation to HR.  (ECF No. 106 at 7.)  Plaintiff has provided no basis for this

11  conclusory allegation.[15]  Therefore, the court finds as an established fact that plaintiff's

12  unsatisfactory performance evaluation in 2009 was not an adverse action in the context of the

13  termination/layoff because it had no effect on his termination.[16]  The only adverse action at issue

14  in this case is plaintiff's termination, aka layoff.

15                      2.  Plaintiff's Prima Facie Case

16         Plaintiff is an African–American who was terminated/laid off, thus satisfying the first and

17  _____

18  [14]  Plaintiff alleges that he was the only employee to receive a negative evaluation, but then he
    elsewhere alleges that another employee did receive a negative evaluation, but that it was used as
19  a "progressive step" of discipline, in comparison to plaintiff, who received a negative evaluation
    with no prior warning or notice.  (ECF No. 106 at 5.)  These allegations are disputed by
20  defendant's undisputed fact.  One Hispanic also received a negative performance evaluation
    during this time period.  (SUF ¶ 16.)  Plaintiff's argument has been rendered irrelevant, however,
21  due to the fact that plaintiff did not lose seniority hours as a result of this negative evaluation.  (Id.
    ¶ 20.)
22  [15]  Plaintiff has produced emails in support which actually serve to hurt his case, indicating
    accusations that he did not log in or out properly, missed hours of work during the day, made
23  personal phone calls from his desk, played on the computer at work, did not come to work on
    time, and slept at his desk.  These emails are dated between April 30, 2002 and August 20, 2008.
24  (ECF No. 66 at 68-76.)  They are accompanied by a letter, dated October 25, 2007, by Deborah
    Foster, to show discrimination by Maria Castellanos and others at EEDD.  (Id. at 77.)  These
25  documents have not been considered because although possibly pertinent to his unsatisfactory
    evaluation in 2009, that evaluation is not an adverse action and had no bearing on his layoff.
26  They are also too remote in time to be considered for his July, 2011 layoff.
27  [16]  Based on this finding, the disputed facts concerning the number of OJT contracts plaintiff
    wrote in comparison to his fellow employees is not material.  See n. 11 supra.
28

1    third elements for prima facie race discrimination.  Defendant does not assert that plaintiff failed

2    to meet the second prong – whether plaintiff was qualified for his position.  Defendant does

3    argue, however, that plaintiff cannot meet the fourth prong of the test because there is no

4    evidence that his layoff was based on his race.  Therefore, defendant argues, plaintiff has not met

5    his initial burden.  Defendant also contends that because it offers evidence justifying plaintiff's

6    layoff, the burden shifts back to plaintiff to show pretext, and plaintiff has failed to meet that

7    burden.

8           Despite plaintiff's pro se status and the minimal burden to establish a prima facie case of

9    discrimination, see Coghlan, 413 F.3d at 1094, this Court finds that plaintiff's unsworn

10   allegations in the complaint are insufficient to meet the showing required by the fourth prong of

11   the McDonnell Douglas analysis.  Plaintiff contends that defendant applied criteria and work

12   rules to plaintiff, the only African-American, which were not applied to his non-African-

13   American peers.  (ECF No. 1 at 4.)  He further alleges that although he had more seniority, he

14   was laid off in lieu of one Hispanic and two Caucasian employees despite their lack of seniority.

15   (ECF No. 66 at 3.)  However, plaintiff's unsworn allegations do not indicate that he had any

16   personal knowledge of the conclusions he alleges.  Similarly, plaintiff has not submitted any

17   material, objective evidence to back up the assertions.  Thus, plaintiff has not set forth a prima

18   facie case, that similarly situated individuals outside his protected class were treated more

19   favorably.  For ease of analysis, however, and because the fourth prong of the McDonnell

20   Douglas test mirrors the pretext analysis, the court will continue to discuss the case as if plaintiff

21   had satisfied his prima facie case, and the dispositive analysis is pretext.

22                 3.  Defendant has Articulated Legitimate, Nondiscriminatory Reasons for

23   Plaintiff's Layoff and Plaintiff has Failed to Show Pretext

24          Even assuming plaintiff has demonstrated a prima facie discrimination claim, defendant

25   has provided legitimate non-discriminatory reasons for its layoff decision which resulted in

26   plaintiff's termination.  The County began suffering budget cuts in 2008, which continued

27   through 2011, resulting in the layoff of 1,000 positions during this time period.  (ECF No. 53, ¶

28   13.)  In particular, EEDD, the department where plaintiff worked, lost funds in 2011, which

1  resulted in the layoff of six positions in March, 2011, and thirteen positions in May, 2011.  Six of

2  those positions in the May, 2011 layoff were job developer positions which included plaintiff's

3  position.  (ECF No. 53, ¶ 13; ECF No. 54, 16.)

4       The policy in place at the time which guided the 2011 layoffs was based on seniority only.

5  (ECF No. 53-15.)  Mr. Solis' declaration states that when he deleted six job developer positions

6  for the 2011-2012 fiscal year, he did not know which individuals would be affected.  (ECF No.

7  54, ¶ 17.)  Because seniority is based on total time with the County and not time with the

8  individual department, Solis states he did not know, and did not try to guess who would be

9  impacted by this decision, and in particular he did not know plaintiff would be laid off when he

10  made his decision.  (Id.)  Plaintiff was laid off at this time because he had less seniority than other

11  employees, and did not have bumping rights.  (ECF No. 53, ¶ 13.)  Plaintiff did not lose seniority

12  as a result of his unsatisfactory performance evaluation in 2009.  (Id. ¶ 11.)  Defendant has

13  articulated legitimate, non-discriminatory reasons based on business justifications for its layoff

14  decision in plaintiff's case.

15       Plaintiff provides numerous arguments in his attempts to show pretext; however, none of

16  them have merit as they could never have been the *cause* of the layoffs, which were based solely

17  on budget and seniority-- nothing else. [17]

18       Plaintiff first disputes, with immaterial evidence, that defendant suffered a reduction in

19  funding, and contends that its adverse action in laying him off was discriminatory or a pretext.

20  Since five other job developers were laid off at the same time as plaintiff, the fact that plaintiff

21  may have been the only African-American laid off reduces the materiality of this fact to

22  inconsequential status.

23       In regard to the decreased funding numbers, plaintiff argues that in fact expenditures in

24  2011-2012 fiscal year were the same as expenditures in the previous fiscal year, 2010-2011.

---

25  [17]  The issue of whether similarly situated employees were treated more favorably than the

26  plaintiff is usually analyzed at the pretext stage rather than the prima facie stage.  Larkin v. The Home Depot, Inc., 2014 WL 7221136, *12 (N.D. Cal. Dec. 18, 2014) (citing Hawn v. Executive

27  Jet Mgmt., Inc., 615 F.3d 1151, 1157-58 (9th Cir. 2010)).  "Moreover, the McDonnell Douglas factors are flexible and must be tailored, on a case-by-case basis, to different factual

28  circumstances."  Id., (citing McDonnell Douglas, 411 U.S. at 802).

(ECF Nos. 66 at 19, 106 at 8.)  Plaintiff has attached budget numbers for the fiscal years 2007-2008 to 2013-2014.  (ECF No. 66 at 82-86.)  The years most pertinent to plaintiff's layoff are 2010 to 2011.  Total actual expenditures in fiscal year 2010-2011 were $19,266,995.  (Id. at 85.)  Expenditures for fiscal year 2011-2012 decreased to $14,125,218.  (Id. at 86.)  Plaintiff was laid off as a result of a May, 2011 decision, after allocations made by the state and federal government were less than anticipated.  (Solis Dec., ECF No. 54, ¶ 16.)  The staff allocations between these two fiscal time periods were also reduced.  In fiscal year 2010-2011, there were 116 allocated positions, and 48.1 temporary positions.  (ECF No. 66 at 85.)  The following fiscal year, 2011-2012, there were only 91 allocated positions, and 1.9 temporary positions.  (Id. at 86.)

The other set of figures that plaintiff uses to make his point, regarding services and supplies, also indicate a decrease in funding rather than an increase.  In fiscal year 2009-10, actual services and supplies were $13.5 million.  (Id. at 84.)  In 2010-11, actual services and supplies were reduced to $9 million.  (Id. at 85.)  In 2011-12, actual services and supplies were just under $6 million.  (Id. at 86.)  Plaintiff discusses a theory that the figures do not reflect separate installments of A.R.R.A. (American Recovery and Reinvestment Act) funding; (ECF No. 106 at 8), however, the budget reports submitted by plaintiff do not confirm this assertion, and plaintiff has submitted no other evidence to support it.  Based on the evidence submitted, there is no material dispute of fact that the County incurred a decrease in funding and positions between 2010 and 2012.

Plaintiff next disputes Mr. Solis' motive in the layoff by arguing that this EEDD director chose a certain number of positions to be eliminated in order to ensure that plaintiff would be among that number, and that Solis also knew how much seniority each employee had to ensure that plaintiff would certainly be laid off.  He has submitted no evidence to support this assertion.  The EEOC fact finding notes submitted by plaintiff actually contradict his position, however.  Mr. Solis stated at that conference:

> Mike Sansoni came on board after AR.  I didn't know the seniority hours that Sansoni or AR had.  We had no idea who would be impacted because it wasn't clear who had bumping rights, and I didn't know who had seniority.  I thought Sansoni would be displaced before AR.  My point is that I wasn't focused on the

> individuals, but on the classifications.   I knew that Sansoni was
> hired after AR and didn't know their seniority hours.   *Every*
> *Hispanic in that class was laid off (5).*

(ECF No. 66 at 27.) (Emphasis added).  These statements are consistent with Mr. Solis'

declaration.

Since it has already been established that the layoffs were determined by seniority only,

by use of an objective mechanism for establishing the objective fact of seniority, it was not

possible for the seniority determinations to be affected by discrimination.[18]

Plaintiff contends that he had more seniority than employees in other job classifications,

such as case managers and business and retention specialists, but those non-African-American

employees were not laid off.  (ECF No. 66 at 3, 16.)  This argument also fails because the only

employees similarly situated to plaintiff at the time of his layoff were job developers.  (ECF No.

54, ¶ 16.)  Moreover, plaintiff's own evidence, the EEOC fact finding testimony, indicates that

five Hispanics in plaintiff's classification were laid off at the time plaintiff was laid off.[19]  (ECF

No. 66 at 27.)

Also important is the fact that plaintiff has failed to produce any evidence that his position

was filled shortly after his layoff by anyone, let alone a non-African-American.  E.E.O.C. v.

Farmer Bros. Co., 31 F.3d 891, 900 (9th Cir. 1994).  See also Leichihman v. Pickwick

International, 814 F.2d 1263, 1270 (8th Cir. 1987) (no adverse inference is drawn where duties

are completely eliminated); Viteri-Butler v. University of California, Hastings College of the

Law, 2014 WL 1022174, *7 (N.D. Cal. Mar. 13, 2014) (noting prima facie case requires showing

that after terminating employee, employer sought replacement employee outside protected class

with equal or lesser qualifications).  Although plaintiff alleges that "within months of terminating

plaintiff claiming reduction of funding, Solis promoted several individuals, and had recalled

---

[18]  Having found that plaintiff's 2009 performance review had no effect on plaintiff's termination,
*supra*, the undersigned finds no need to address various other arguments regarding this
performance evaluation.  See Reply, ECF No. 110 at 10-14.

[19]  Plaintiff's allegation that his supervisor, Ms. Castellanos, "made negative references to
African-Americans under her supervision and otherwise," (ECF No. 66 at 13), is unsupported and
not relevant to the adverse action, which came at least four years after she was no longer his
supervisor.  (Castellanos Dec., ECF No. 56, ¶ 8.)

several others to Civil Service positions, all either Hispanic and/or White and all of whom had less seniority than Plaintiff at the time of termination…," (ECF No. 66 at 19), plaintiff has provided no evidence to support this assertion.[20]  Plaintiff's argument that the remaining job developers took over plaintiff's duties, and therefore his position was not eliminated, does not help his case unless he can show that race was a determining factor in his termination.  See Leichihman, 814 F.2d at 1270.  Even if this allegation is true, defendant has articulated a legitimate, nondiscriminatory business reason for its reduction in staff, which was based upon an objective computerized determination of seniority.  Plaintiff has not produced evidence to show that this objective articulation was not correct.

Nor is plaintiff's further assertion that the duties of six laid off job developers were absorbed by the remaining three job developers supported by any evidence, while defendant has provided evidence that these six positions were completely eliminated.  (ECF No. 54, ¶ 16.)

Plaintiff's conclusory statement that within days and weeks after the layoffs, defendant promoted several individuals and returned several others to the Department, is unsupported. (ECF No. 106 at 8.)  As defendant points out, although plaintiff has provided interrogatory responses indicating that eleven employees returned to EEDD after the July, 2011 layoff, the seniority of these employees in relation to plaintiff's seniority is unknown.  (ECF No. 66 at 36.)

The County's re-employment policy is based on the employee's seniority in the particular class from which he or she was laid off.  (Goodman Supp. Dec.; ECF No. 110-3, ¶ 3.) Furthermore, the employees re-employed pursuant to the response to interrogatory number 9 received job titles on their return for which plaintiff may not have been qualified, and he has not shown otherwise.  Plaintiff was employed as an Employment Services Specialist II (SUF ¶ 1), and none of the jobs to which other employees returned were for this position or Specialist I.

Furthermore, these interrogatories cannot be considered to determine who was laid off in July, 2011, at the same time as plaintiff, because they only include employees who returned, not

---

[20]  Although plaintiff states that Director Solis had a reputation of running a department known as "little Mexico," and that the Hispanic employees protected him, (ECF No. 106 at 9), these facts, even if true, are irrelevant to the layoff which was based on objective criteria.  For this reason, plaintiff is unable to show that any alleged discrimination was the cause of the layoff.

1    all employees who were laid off.  (ECF No. 66 at 33-38.)

2           Based on defendant's re-employment policy which is based strictly on seniority, and Ms.

3    Goodman's declaration that the policy was followed in this case, plaintiff is unable to show

4    pretext in this regard.

5           Plaintiff states that he can produce a witness, Peter Brown, an "EEO Analyst I" who

6    performed the preliminary investigation, to testify regarding his discovery in 2008 that

7    "Defendant has no desire to protect African-Americans from prejudice and bigotry expressed by

8    Defendant employees like Castellanos and more importantly Defendant is extremely prejudiced

9    against African-Americans who make charges of discrimination summarily terminating any and

10   all African-Americans who make and/or allege discrimination."  (ECF No. 66 at 15.)  Plaintiff

11   has produced no evidence whatsoever of what this witness might say, other than plaintiff's own

12   conclusion.  This bald hearsay allegation does not even meet the minimum standards of Jones and

13   Fraser.  In any event, such testimony could not refute the reason for plaintiff's termination which

14   defendant has shown to be based on a neutral policy which considers seniority only.

15          Finally, plaintiff contends that he was not promoted on two occasions as a result of his

16   unsatisfactory evaluation in 2009, and that these actions are evidence of pretext for his layoff.

17   (ECF No. 106 at 6.)  The only hint he provides is his allegation that when Dan Maloney retired,

18   plaintiff was not promoted to that position.  (ECF No. 66 at 7-8.)  In regard to this event,

19   defendant has provided evidence that when Mr. Maloney retired, Mr. Solis did not fill this

20   position but divided the job duties among other employees, including Teresa Parker, who

21   received no pay increase for these added duties.  (SUF ¶¶ 26-27.)  The remaining duties were split

22   among three other employees, who also did not receive additional compensation.  (Id. at ¶ 28.)

23   Plaintiff has provided no evidence to dispute these facts.  More importantly, however, is that

24   these allegations are irrelevant to the adverse action, his layoff, which was based on non-

25   discriminatory objective reasons.  Plaintiff cannot possibly show that these allegations, or any

26   others, were the cause of his layoff.[21]

---

27   [21]  Plaintiff indicates he applied for a second position, but was not hired based on his
     unsatisfactory evaluation; however, he has failed to provide facts or evidence or even proposed
28   evidence concerning this position.  (ECF No. 106 at 6.)

1    Plaintiff's argument that Human Resources' decision was discriminatory in finding him

2    unqualified to sit for a promotional exam for EEDD Division Manager based on his limited prior

3    supervisory experience, is not supported by any evidence, and is rejected as irrelevant to the

4    layoff, for the reasons repeated above.  (ECF No. 66 at 14.)

5    Plaintiff alleges that other African-American employees were discriminated against when

6    they were not promoted.  He cites Vernell Hill as an example of a qualified and more experienced

7    African-American who was not selected for a position.  (ECF No. 66 at 12.)  He also points to

8    Allet Williams as the only African-American promoted by Mr. Solis in the last ten years.  (Id. at

9    14, 21.)  Plaintiff has failed to supply any evidence supporting these allegations, and in any event

10   they are irrelevant to the cause of his layoff, funding decreases, and the objective basis used in

11   determining his layoff, seniority.

12   Defendant has met its burden by articulating legitimate, nondiscriminatory reasons for its

13   employment actions which were not a pretext.  Plaintiff has failed to produce any material facts to

14   dispute the reason for his layoff, and the criteria used in determining who was laid off.  He has

15   not demonstrated a material issue of fact that his race was the "motivating factor" for the layoff.

16   See Staub v. Proctor Hosp., 562 U.S. 411, 131 S.Ct. 1186, 1191 (2011).  Therefore, defendant

17   should be granted summary judgment on plaintiff's claim of discrimination in regard to his

18   termination.

19                    B.  Retaliation Under Title VII

20   Defendant also moves for summary judgment as to plaintiff's claims of retaliation under

21   Title VII.  "Title VII prohibits, among other things, retaliation against an employee for making a

22   charge or otherwise participating in a Title VII proceeding."  Nilsson v. City of Mesa, 503 F.3d

23   947, 953 (9th Cir.2007) (citing 42 U.S.C. § 2000e–3(a)).  Without direct evidence of retaliation,

24   the burden shifting framework of McDonnell Douglas applies.  "To establish a claim of

25   retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the

26   plaintiff suffered an adverse employment action, and (3) there was a causal link between the

27   plaintiff's protected activity and the adverse employment action."  Ray v. Henderson, 217 F.3d

28   1234, 1240 (9th Cir. 2000); accord Davis v. Team Elec. Co., 520 F.3d 1080, 1093–94 (9th

1    Cir.2008).  If the plaintiff establishes a prima facie case of retaliation, "the burden shifts to the

2    defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff

3    must produce evidence to show that the stated reasons were a pretext for retaliation."  Surrell v.

4    Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir.2008); *accord* Nilsson, 503 F.3d at 954.

5           An adverse employment action is "any adverse treatment that is based on a retaliatory

6    motive and is reasonably likely to deter the charging party or others from engaging in protected

7    activity."  Ray, 217 F.3d at 1242-43.  The adverse action must be non-trivial in nature and would

8    deter reasonable employees from complaining of civil rights violations.  Brooks v. City of San

9    Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

10          "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause

11   of the challenged employment action."  Univ. of Texas Sw. Med. Ctr. v. Nassar, —— U.S. ——,

12   133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013); Campbell v. Hagel, 536 Fed.Appx. 733 (9th

13   Cir.2013).

14          In regard to the retaliation claim, defendant asserts that plaintiff cannot demonstrate a

15   genuine dispute of material fact addressed to the causal link between plaintiff's protected

16   activities and his layoff.

17          Causation can be inferred by a temporal proximity between the protected activity and the

18   adverse action, that the action follows "close on the heels" of the complaint.  Ray, 217 F.3d at

19   1244.  Although a plaintiff may permissibly proceed on a temporal theory of causation, see, e.g.,

20   Davis, 520 F.3d at 1094, the temporal proximity between an employer's knowledge of protected

21   activity and an adverse employment action must be "very close" to support a theory of causation

22   based on timing alone. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per

23   curiam) (holding that an adverse employment action taken 20 months after the protected conduct

24   "suggests, by itself, no causality at all"); *accord* Davis, 520 F.3d at 1094 ("We have held that

25   causation can be inferred from timing alone where an adverse employment action follows on the

26   heels of protected activity.") (citation and quotation marks omitted).  The Court of Appeals has

27   held that time gaps of nine and eighteen months between protected activity and alleged retaliatory

28   action were too long to support a finding of causation based on timing alone.  See Manatt v. Bank

20

of Am., 339 F.3d 792, 802 (9th Cir.2003) (nine months); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir.2002) (eighteen months).  However, it has found sufficient causation in retaliation claims involving a time gap of seven weeks, and has found gaps of nearly two months and three months probative of causation.  See Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir.2004) (seven weeks); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.1987) (less than three months).

The undisputed facts are that plaintiff engaged in protected activity in 2004 when he filed a Civil Service Rule 20 complaint and an EEO claim, in 2007 when he filed a Civil Service Rule 20 complaint, on December 18, 2009 when he filed a grievance with the union, and in February, 2010, when he filed an EEO claim.[22]  (SUF ¶ 24; Goodman Dec., Ex. K.)  The decision to eliminate plaintiff's position was made in May, 2011.  As plaintiff's 2009 unsatisfactory employment evaluation was determined not to be an adverse action, the only adverse action remaining is plaintiff's 2011 layoff, which did not follow "close on the heels" of his preceding protected activity in late 2009 and early 2010.  In fact, the layoff decision occurred approximately a year and three months after his February, 2010 complaint.  In fact, as pointed out by defendant, during this time period plaintiff was given two satisfactory reviews, on March 18, 2010 and December 1, 2010.  (SUF ¶¶ 22, 23.)  Based on these facts, plaintiff has not demonstrated causation by timing alone.

Even if plaintiff could establish a prima facie case, the parties' arguments in connection with the second and third prongs of the burden shifting test as fleshed out above in regard to plaintiff's race discrimination claim are relied on here, and result in the same conclusion.  The undersigned already found that defendant met its burden to provide legitimate nondiscriminatory reasons for the layoff, and that plaintiff failed to create a genuine dispute of material fact in regard to pretext. Plaintiff has failed to show that defendant's desire to retaliate was the "but-for

---

[22]  In his opposition, plaintiff asserts the existence of additional protected activity, such as becoming a shop steward in 2001, then being transferred forcefully to Tracy six months later; assisting in "defeating efforts of Solis to change the working conditions of 'job developers, and within days, [p]laintiff was targeted for special evaluation," (which was satisfactory).  (ECF No. 66 at 17.)  However, plaintiff has not provided evidence in support of these claims.  Even if he could supply evidence, these years earlier activities are too remote in time from the 2011 layoff.

1  cause" of his termination.  Accordingly, defendant is entitled to summary judgment with respect

2  to plaintiff's retaliation claim.

3  CONCLUSION

4       Accordingly, IT IS HEREBY RECOMMENDED that: defendant's March 24, 2014

5  motion for summary judgment, (ECF No. 51), be GRANTED, and judgment be entered in favor

6  of defendant.

7       These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9  after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within fourteen days after service of the objections.  The parties are

13  advised that failure to file objections within the specified time may waive the right to appeal the

14  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15  Dated: February 2, 2015

16                     /s/ Gregory G. Hollows

17                  UNITED STATES MAGISTRATE JUDGE

18

19

20  GGH:076/Robinson2783.fr

21

22

23

24

25

26

27

28